(Opinion published 52 N. W. Rep. 275.)

STATE OF MINNESOTA vs. W. H. HARRIS. SAME vs. EDWARD A. O'BRIEN. SAME vs. MARTINUS JEVNE. SAME vs. CHARLES L. LOOMIS. SAME vs. CHARLES H. WOOD. SAME vs. EDWARD O. BROWN. SAME vs. THOMAS GALLAGHER et al. SAME vs. PATRICK LYONS.

Argued May 10, 1892.  Decided June 2, 1892.

**Trial by Jury for Violation of City Ordinance.**

City of Mankato v. Arnold, 36 Minn. 62, followed, as to the right of trial by jury in a prosecution for the violation of a city ordinance (regulating the sale of intoxicating liquors) under a charter authorizing summary trials.

**Revocation of a License is not Punishment.**

The expressly authorized revocation by the court of a license to sell intoxicating liquors, upon conviction of the licensee of a violation of the ordinance, does not constitute a *punishment*, within the meaning of the constitution, so as to remove such cases beyond the jurisdiction of justices of the peace.

**Justices of the Peace, their Jurisdiction.**

Nor is it beyond the jurisdiction of justices of the peace to impose the punishment of imprisonment in a city *workhouse.*

**Closing Saloons on Sunday.**

Ordinance requiring saloons to be kept closed on Sunday, *held* not unreasonable.

**City Ordinance, Title of.**

The title of an ordinance *held* sufficient to embrace what is ordained under it.

**Laws of 1887 did not Repeal City Ordinances.**

The general legislation of 1887, concerning and regulating the sale of intoxicating liquors, although applicable to cities, *held* not to have had the effect of repealing by implication existing municipal ordinances upon the subject, or the charter power to enact ordinances not inconsistent with the general law.

**Punishment by Laws and by Ordinance.**

Acts which are punishable under the general law may also be made punishable by ordinance. Various complaints, and the evidence thereunder, *held* sufficient to justify convictions.

ON APPEAL FROM CLERK'S TAXATION OF COSTS.

Submitted and decided June 22, 1892.

**Costs under Minneapolis Ordinance.**

Costs are recoverable in suits for the violation of ordinances of the city of Minneapolis as in civil actions.

Appeal by defendant, Martinus Jevne, from an order of the Municipal Court of the city of Minneapolis, *Elliott,* J., made October 1, 1891, denying his motion for a new trial.

Complaint was made in that court that on August 16, 1891, defendant, being the proprietor of a saloon where intoxicating liquors were sold by the glass, did fail and omit to close his said saloon and to keep it closed during that day, which was Sunday; contrary to an ordinance of that city. The ordinance provided that every saloon and bar or other place where liquors are sold by the glass or drink shall be closed and kept closed during the whole of every Sunday; and if any person shall violate this provision he shall on conviction before the Municipal Court be punished by a fine, not less than $25,

v.50m.—9

nor more than $100; or imprisoned in the city prison, or county jail, or in the city workhouse, for not less than thirty, nor more than ninety days. The court upon such conviction, if the person convicted hold a license, may upon the first conviction, and shall upon the second, revoke it pursuant to the city charter, ch. 4, § 16.

The defendant being brought into court pleaded not guilty, and asked for a jury trial. This the court refused, and ordered the prosecution to proceed without a jury. To this defendant excepted. He also objected that the ordinance was void because the city charter did not authorize the city council to enact it, and because the punishment is in excess of the power given the council by the charter. The objections were overruled and he excepted. He further objected that the Municipal Court did not have jurisdiction because the punishment might be greater than $100 fine, or ninety days in jail, to-wit, revocation of his license to sell intoxicating liquors. This objection was also overruled and he excepted. The city offered its evidence to support the complaint. Defendant offered no evidence. He was found guilty and was sentenced to pay $25 fine, and in default of payment to be committed to the workhouse for thirty days. He moved the court to grant him a new trial. It was denied, but proceedings on the conviction were stayed pending the appeal to this court. The other above entitled cases were of a similar character. Counsel on the argument stated that more than sixty other appeals from the same court upon convictions under this ordinance were pending in this court, and that all of them would abide the decision of this.

*Lars M. Rand, Robert Jamison, Marcus P. Hayne, L. W. Gammons, Johnson & Rinehart, Odell & McMahon,* and *Meagher & Betts,* for appellants.

The court erred in refusing defendant's request and demand for a jury trial. *Benson v. State,* 5 Minn. 19, (Gil. 6;). *State v. West,* 42 Minn. 147; *Platteville v. Bell,* 43 Wis. 488; *McGear v. Woodruff,* 33 N. J. Law, 213; *Lewis v. State,* 21 Ark. 209; *State v. Peterson,* 41 Vt. 504; *Plimpton v. Town of Sumerset,* 33 Vt. 292; *Creston v. Nye,* 74 Iowa, 369.

The ordinance is unreasonable and invalid. The Municipal Court of the City of Minneapolis has construed the ordinance to mean that it is immaterial for what purpose the place is open, if it is not kept closed during the prohibited time the penalty of the ordinance is incurred. Under such construction no person can open the door of, or enter his saloon on Sunday for any purpose, without being guilty of a violation of the ordinance. *In re Ah Jow,* 29 Fed. Rep. 181; *Yick Wo* v. *Hopkins,* 118 U. S. 356.

The ordinance is void because its provisions are not germane to the title. It embraces several subjects, each subject a separate offense, while the title is; "an ordinance to license and regulate all persons vending, dealing in, or disposing of, spirituous, vinous, fermented or malt liquors, and to repeal ordinances regulating the same." *Commonwealth* v. *Fontain,* 127 Mass. 452; *Morgan* v. *State,* 81 Ala. 72; *In re Hauck,* 70 Mich. 396.

The provisions of Minneapolis city charter to license the sale of liquors, were superseded by the Acts passed in 1887 to amend 1878 G. S. ch. 16. By strong implication they operate to repeal all acts passed prior thereto. The language is: all the provisions shall also apply to the municipal corporations, anything in the charter or ordinances to the contrary notwithstanding. Laws 1887, ch. 81. *State* v. *Peterson,* 38 Minn. 143; *Oshkosh* v. *Schwartz,* 55 Wis. 483; *Oshkosh Fire Dep't* v. *Tuttle,* 48 Wis. 91.

The punishment provided for in the ordinance is different from the punishment prescribed by the statute for the same offense, and is therefore void. *City of St. Paul* v. *Byrnes,* 38 Minn. 176; *State* v. *Nolan,* 37 Minn. 16.

The court erred in assuming jurisdiction to try and determine said cause, there having been no presentation or indictment of a grand jury.

*Moses E. Clapp,* Atty. Genl., *Robert D. Russell,* and *L. A. Dunn,* for respondent.

The revocation of the license is no part of the judgment or punishment within the meaning of the constitution. It is rather a consequence of the judgment of conviction. The license is neither a contract between the city or state, and the licensee, or property in any

legal or constitutional sense. It is simply a personal, unassignable privilege to do what is otherwise unlawful or prohibited. The license is issued in the exercise of the police power of the state, and is subject to the direction of the state, which may modify, revoke, or continue it as may be deemed fit. *Metropolitan Board of Excise* v. *Barrie*, 34 N. Y. 657; *Ballentine* v. *State*, 48 Ark. 45; *Com.* v. *Brennan*, 103 Mass. 70; *Calder* v. *Kurby*, 5 Gray, 597; *Brockway* v. *State*, 36 Ark. 629; *Hurber* v. *Baugh*, 43 Iowa, 514; *Columbus City* v. *Cutcomp*, 61 Iowa, 672; *State* v. *Larson*, 40 Minn. 63; *Wiggins* v. *City of Chicago*, 68 Ill. 373; *Schwuchow* v. *City of Chicago*, 68 Ill. 444.

The fact that an ordinance punishes acts that are made penal by the general laws, does not of itself invalidate the ordinance. The same act may be an offense both against the state and the ordinance. *State* v. *Ludwig*, 21 Minn. 202; *State* v. *Charles*, 16 Minn. 474, (Gil. 426;) *State* v. *Lee*, 29 Minn. 445; *State* v. *Oleson*, 26 Minn. 507; *City of Mankato* v. *Arnold*, 36 Minn. 62; *State* v. *West*, 42 Minn. 147; *Moore* v. *City of Minneapolis*, 43 Minn. 418.

DICKINSON, J. The principal points to be decided in several of the eight cases, entitled as above, are the same. These will be first considered, after which attention will be directed to some matters which are peculiar to some of the individual cases.

These were all prosecutions in the municipal court of the city of Minneapolis for violations of an ordinance of the city in keeping open, on Sunday, saloons or hotel bars, places where liquors are sold by the glass.

It is urged that the defendants had the constitutional right of trial by jury, which the court refused to allow. This was the precise question involved in *City of Mankato* v. *Arnold*, 36 Minn. 62, (30 N. W. Rep. 305,) the decision in which must be accepted as a determination of the law upon this point. The statutory provisions relating to the summary procedure in the municipal court of the city of Minneapolis in such cases (Sp. Laws 1889, ch. 34, § 7) are like those relating to the city of Mankato, (Sp. Laws 1885, ch. 119, § 6,) referred to in the *Arnold Case*. These cases are in no way distinguishable from that. In commenting upon the ground upon which

that decision rests, in *State* v. *West*, 42 Minn. 147, (43 N. W. Rep. 845,) it was not intended to question, much less to overrule, what had been decided in *City of Mankato* v. *Arnold*, as is apparent from the parenthetical clause on page 150.

Section 13 of the ordinance under which the defendants were convicted provides that any person convicted of a violation of any of its provisions shall be punished by a fine of not less than $25 nor more than $100, or be imprisoned in the city prison or county jail or city workhouse for not less than thirty days nor more than ninety days; and it is added that "the court upon such conviction, if the person so convicted shall hold a license under the provisions of this ordinance, may upon the first conviction, and upon the second conviction shall, in addition to the punishment above provided, revoke such license, as authorized and required to do in section 16, ch. 4, of the city charter." This provision relating to the revocation of licenses does not render the ordinance void, nor does it change the grade of the offense or of the punishment, so as to place such causes beyond the jurisdiction of the municipal court, or so as to entitle the accused to a jury trial. The charter expressly authorizes this provision of the ordinance. But the theory of the defendants is that the revocation of a license upon conviction of a violation of the ordinance constitutes *punishment* in addition to the fine or imprisonment which may be imposed, and hence that the case is placed beyond the constitutional jurisdiction of justices of the peace, and that the defendant cannot be held to answer therefor unless on the presentment or indictment of a grand jury. The fault of the argument lies in the premise that the revocation of the license is a "punishment," within the meaning of that word in the clause of the constitution defining the limit of the jurisdiction of justices of the peace. It is not a punishment in that sense of the word. The license is a mere privilege conferred to pursue a business which is peculiarly subject to police regulation and control. It might be refused altogether, or granted only upon conditions. It may be legally revoked, without judicial proceedings. *State* v. *Cooke*, 24 Minn. 247; *Metropolitan Board of Excise* v. *Barrie*, 34 N. Y. 657.

While the revocation by the court follows the conviction as a con-

sequence of the violation of the ordinance, it has no more the purpose or effect of punishment than if the license were revoked by the mayor or city council, neither of whom would have the power to impose punishment for the offense.   There is a plain distinction between such a withdrawal of a special privilege which has been abused, the termination of a mere license, and the penalty which the law imposes as a *punishment* for crime.   The constitutional provision limiting the jurisdiction of justices of the peace by the measure of the "punishment" which may be imposed has no reference to any such incidental consequences.   *State* v. *Larson*, 40 Minn. 63, (41 N. W. Rep. 363.)   We have not deemed it necessary to refer particularly to the provision in the ordinance to the effect that all licenses shall be issued upon the understanding that they may be thus revoked.   That might afford another reason for the conclusion which we have expressed.   That the persons convicted under the ordinance might be imprisoned in the city *workhouse*, that is, at hard labor, is a mere incident or condition of imprisonment, which does not extend the punishment beyond the limit of the jurisdiction of justices of the peace.   *State* v. *West*, 42 Minn. 147, 149, (43 N. W. Rep. 845.)

We are asked to declare the ordinance void for unreasonableness, because in unqualified terms it provides that every saloon, and the bar of every tavern, inn, and other place where liquors are sold by the glass or drink, shall be closed and kept closed during the whole of every Sunday.   This is said to be unreasonable, because even the proprietor of such a place is prohibited from entering it himself for any purpose, however great the necessity.

It is enough to say that such a construction of the ordinance is not necessary, and, if that would make the ordinance void for unreasonableness, such a construction would not be put upon it.   It is certainly susceptible of a less strict construction, which would not make it an offense for the proprietor to enter his place temporarily, or for any really necessary purpose.

The point that the title of the ordinance did not justify the including of the provisions embodied in it is decided against the appellants without comment.

The points raised in some of these cases present the question whether the amendment by Laws 1887, ch. 81, of 1878 G. S. ch. 16, relating to intoxicating liquors, was intended to cover the whole subject, to supersede all local ordinances relating to the business, and by implication to repeal such ordinances, as well as all prior enactments authorizing the adoption of municipal ordinances regulating the keeping of drinking places and the business carried on in them. In *State* v. *Peterson,* 38 Minn. 143, (36 N. W. Rep. 443,) it was held that this act of 1887, as well as chapters 5 and 6 of the Laws of the same year, were applicable to cities, and were complete, operative statutes, enforceable within the cities of the state without the aid of supplementary local ordinances. But that decision did not reach the question here presented. We are satisfied that no such repealing or exclusive operation can be given to the legislation of 1887. It is only by implication, if at all, that such an effect is to be given to these later statutes; and there stands in the way of such a construction, not only the general principle that repeals by implication are not favored, but this principle has peculiar force from the fact that the laws, the implied repeal of which is in question, were principally *special* laws, enacted to meet the needs of particular localities, under their particular conditions, while the repealing act was general, and not thus particular. *Moore* v. *City of Minneapolis,* 43 Minn. 418, (45 N. W. Rep. 719.) When these acts were passed the state had long pursued the policy of conferring upon the local governing bodies in cities and villages the power to regulate by ordinance the sale of intoxicating liquors, and this power had been so generally exercised that perhaps the most of the law upon the subject consisted of municipal ordinances. The legislature could not have been unmindful of this, and if it had been intended by these enactments to repeal all such ordinances, and to withdraw the power of local regulation, it is probable that the intention would have been expressed. But that such was not the intention may be also inferred from the fact that the same legislature which enacted these laws of 1887 adhered to the policy of allowing the regulation of the business by municipal ordinances. Not only was this power expressly given by special charters just before

the enacting of chapter 81 of the Laws of 1887, but the same was done directly after the enactment of that law. The special laws of that year show that in at least two municipal charters—those of the cities of Mankato and of East Grand Forks—the power to regulate this business by ordinance was expressly declared in acts approved within two and four days, respectively, after the approval of chapter 81 of the General Laws of 1887. Moreover, the special laws of every subsequent session of the legislature are full of acts conferring such authority. Again, both in chapters 6 and 81 of the General Laws of 1887 may be traced a recognition of the continued existence of municipal ordinances, as constituting a part of the law upon the subject. See sections 2 and 5 of the former act, and sections 27 and 29 of the latter. Finally, it is to be observed that the continued existence of local municipal ordinances, and of the power to adopt such ordinances, is not inconsistent with the general legislation of 1887, although that has effect in all municipalities as well as elsewhere. The general law does not necessarily repeal all local municipal ordinances or the previously conferred power to pass ordinances respecting this subject. Only in so far as the local ordinances or authority may be inconsistent with this general legislation has the latter a necessary repealing effect. An ordinance may be valid and effectual even though it relates to matters which are made offenses and declared punishable under the general law, even though the punishment prescribed in both be not the same. A prosecution may be maintained under the state law, notwithstanding a conviction for a violation of the ordinance. Such is the effect of the decisions of this court in *State* v. *Ludwig*, 21 Minn. 202; *State* v. *Lee*, 29 Minn. 445, (13 N. W. Rep. 913,) and cases cited. Enough has been said to show why we hold, as we do, that the general law of 1887 did not forbid the enactment of the ordinance under which these defendants were prosecuted.

The Cases of *O'Brien* and *Wood* differ from the others in the fact that the places alleged to have been kept open in violation of the ordinance constituted the bars of hotels. It is contended that the complaints were insufficient, and that there was a variance between the complaint and the proof. In the former case the place is designated

in the complaint as "that certain saloon [of which the defendant is alleged to be the owner and proprietor] known and designated as the 'Bar of the West Hotel,' [the location of which is particularly described,] said saloon being a place where intoxicating liquors are sold by the glass and drink." The accusation sets forth the willful failure of the defendant to close and keep closed "his said saloon" on a specified Sunday. The complaint was sufficient. If this had been an indictment, the defects suggested would not have been regarded as material under the liberal and reasonable rules prescribed by our statute relating to the sufficiency of indictments. 1878 G. S. ch. 108, § 10, subds. 6, 7, and § 11. The sufficiency of complaints in inferior courts charging minor offenses is, at least, not to be tested by any more rigid or technical rules. It is not important whether the term "saloon" was a perfectly proper designation of the place, for it was also designated as the bar of the West Hotel, and as a place where intoxicating liquors were sold by the glass. So far as concerned the nature of the offense, it was immaterial whether the place were to be deemed a saloon kept for the sale of liquors, or a hotel bar kept for the same purpose.

In the Case of *Wood* the complaint is similar, except that it does not describe the place as a bar of a hotel, but as a "saloon known and designated as 'Number Nine Washington Avenue South,' in the Nicollet House, in said city, * * * said saloon being a place where intoxicating liquors are sold by the glass or drink." The defendant had a license for the selling of liquors at this place. We think that the complaints in these cases were sufficient, and that the proof did not materially vary from the complaints.

In some of the cases the point is made that the complaints do not allege that the defendants had licenses to sell intoxicating liquors. It is immaterial under the ordinance, as respects the offense of keeping open on Sunday, whether they had licenses or not.

In all of the cases it is claimed that the evidence was insufficient to show that the defendants were chargeable with any fault in respect to the keeping open of their places, even if it showed that they were kept open. We shall not here refer to the evidence particularly. It was sufficient in each of the cases to justify the conclu-

sion by the trial court that these places where the business of sell-ing liquor was carried on under licenses therefor were kept open on Sunday for the prosecution of that business in the usual way, ex-cept that in most of the cases the way of entrance on that day was by side or back doors, instead of by the doors by which customers were accustomed to enter on other days. While in most of the cases the proprietors were not themselves engaged in selling liquor on the days charged, and in some of the cases were not even in town, the manner in which the business was being conducted justi-fied the inference that it was done with their consent. It was im-material that they may not have expressly directed or consented to their places being kept open on the particular days specified, if they had given any general consent or authority to keeping their places open on Sunday. In thus speaking of the subject of the defend-ants' authority or consent, we would not have it understood that we regard it as necessary to a conviction that the consent or authority of the proprietor of a saloon to such a violation of the law should be shown. It is probably his business to see to it that his place is closed, and, if it is found open, probably he would be deemed to have violated the law, unless, at least, he shows himself to have been without fault. But it is unnecessary to so decide.

In *Lyons' Case* the point is made that the proof did not show that the acts complained of were done within the city of Minneapolis. But the admission of the defendant at the commencement of the trial that, on the day specified, he was the proprietor of the saloon described in the complaint, supplies the necessary proof in this par-ticular.

In each of the above-entitled cases the judgment is affirmed.

(Opinion published 52 N. W. Rep. 387.)

---

### ON APPEAL FROM TAXATION OF COSTS.

Per Curiam. We have heretofore held that upon appeals in suits for violations of the ordinances of the city of Minneapolis, although such suits are, under the charter, brought in the name of the state,

and although in some respects *quasi* criminal, yet, as the state is only a nominal party, costs are recoverable as in civil actions between private persons. We follow that holding, and the clerk's allowance of costs is affirmed.

(Opinion published 52 N. W. Rep. 531.)