## STATE v. A. S. BROMS.[1]

March 15, 1918.

No. 20,746.

**Criminal law — disorderly conduct — complaint sufficient.**

1. The complaint is sufficient under State v. Olson, 115 Minn. 153.

**Same — defendant not entitled to jury trial.**

2. The prosecution being under an ordinance defendant was not entitled to a jury.

**Same — statement of trial judge as to evidence not equivalent to findings — assignments of error.**

3. Errors cannot well be assigned upon the items of a statement of the trial judge as to what the evidence established. The ultimate finding to be made was whether defendant was guilty or not guilty of the offense charged.

**Same — conviction sustained by evidence.**

4. The evidence sustains the finding that defendant was guilty of violating the city ordinance relating to breaches of the peace and disorderly conduct.

Defendant was accused of violation of the ordinance of Minneapolis prohibiting disorderly conduct, tried in the municipal court of that city before Charles L. Smith, J., found guilty, and sentenced to hard labor in the workhouse of Minneapolis for 90 days. From the judgment and an order denying his motion for a new trial, defendant appealed. Affirmed.

*A. W. Uhl,* for appellant.

*Lyndon A. Smith,* Attorney General, *James E. Markham,* Assistant Attorney General, *C. D. Gould,* City Attorney, *John T. O'Donnell* and *Thomas B. Kilbride,* Assistant City Attorneys, for respondent.

HOLT, J.

The charge was: "That at and within the corporate limits of Minneapolis, on the 13th day of September, 1917, the defendant then and

[1] Reported in 166 N. W. 771.

there being, did wilfully, wrongfully and unlawfully make, aid, countenance and assist in making a noise, riot, and disturbance and improper diversion in a public place, and did collect with bodies and crowds for unlawful purposes, to the annoyance and disturbance of the citizens and travelers then and there being and passing, contrary to the provisions of an ordinance" of said city. The trial resulted in a conviction. Defendant moved for a new trial and appeals from the order denying the motion and from the judgment.

The defendant was arrested while in the alleged act of violating the ordinance, and at once brought before the municipal court of Minneapolis where the charge was made on the "tab" of the clerk in the language above set forth, which in substance is the wording of the ordinance defining and punishing disorderly conduct in public places. He pleaded not guilty, and went to trial without raising any objection to the form of the complaint.

The contention that the complaint is insufficient is decided to the contrary in State v. Olson, 115 Minn. 153, 131 N. W. 1084, which case also distinguishes the one at bar from State v. Swanson, 106 Minn. 288, 119 N. W. 45.

The prosecution being for a violation of a city ordinance, it is settled that defendant was not entitled to a jury trial. City of Mankato v. Arnold, 36 Minn. 62, 30 N. W. 305.

At the conclusion of the testimony the trial court, preliminary to pronouncing defendant guilty, recited what the evidence proved the defendant to have said in causing the disturbance. This recital appellant treats as findings of fact and assigns error upon the several parts thereof. We do not think these statements of the court should be so considered. The ultimate finding required by the law and practice was whether defendant was guilty or not guilty of the charge upon which he was tried, and the real question by all these assignments of error is the sufficiency of the evidence to sustain the charge.

The defendant styles himself a socialist organizer and had chosen a public street in the city as the place to promulgate his views and gain adherents. More than a hundred persons quickly congregated about him as he held forth. Witnesses for the prosecution testified that he publicly denounced President Wilson and Governor Burnquist as grafters; that

he said the President was a lawbreaker in sending drafted men out of the boundaries of our country to fight; that he sneeringly referred to our flag as "that thing;" and that the crowd became excited and sought to get at him, but were kept back by policemen and a soldier present. To a certain extent defendant's own witnesses corroborate the prosecution in these matters. Defendant places a different interpretation upon his reference to the flag, and claims that he only questioned the President's right to order the militia into foreign service. However that may be, the question is not so much whether what defendant said, in and of itself, violated any law, but whether, considering the time and place, his words and action aided and assisted in making a disturbance or improper diversion in a public place.

It is perfectly plain that in times such as these, for one to publicly say or do things which might be taken as an attempt to belittle the nation's flag, or charge the commander in chief of the army and navy with flagrant crimes and wrongs, is sure to start a riot and a disturbance of the worst sort. When a nation is at war, its patriotic citizens are quick to resent such talk as defendant indulged in. It is no defense to say that the audience would have no right to take the law into its own hands.

This ordinance is directed against provoking a breach of peace in a public place. People v. Burman, 154 Mich. 150, 156, 117 N. W. 589, 25 L.R.A.(N.S.) 251, sustained a conviction under a similar ordinance. Defendants there had carried a red flag in a parade, thereby infuriating the public. The court said: "It is idle to say that the public peace and tranquility was disturbed by the noise and violence, not of defendants, but of those whose sentiments they offended. When defendants deliberately and knowingly offended that sentiment, they were responsible for the consequences which followed, and which they knew would follow." The same principle is made to support the conviction in People v. Most, 171 N. Y. 423, 64 N. E. 175, 58 L. R. A. 509, and Commonwealth v. Oaks, 113 Mass. 8.

Defendant asserts his constitutional right to freedom of speech. We do not think the question is involved. He has no constitutional right by means of the privilege of freedom of speech to force his thoughts upon the attention of the public in public places in such manner that riot and disorder will inevitably result.

The order and judgment must be affirmed.