## STATE v. MICHAEL G. HOBEN.

98 N. W. (2d) 813.

August 21, 1959—No. 37,703.

*Ben R. Toensing,* for appellant.
*Walter C. Gustafson,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of the District Court of Hennepin County by which the defendant was adjudged guilty of driving an automobile while intoxicated, in violation of an ordinance of the village of Edina. On trial in municipal court of Edina without a jury, the defendant was found guilty of having driven an automobile under the influence of liquor in violation of Edina Ordinance No. 191, § 303.[1] A 30-day workhouse sentence was imposed. The defendant appealed to the district court on questions of law and fact and thence to this court.

---

[1] "It is unlawful for any person who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive or operate any vehicle within this Village."

M. S. A. 169.121 similarly provides: "It shall be unlawful and punishable as provided in this section for any of the following persons to drive,

This case requires a discussion of certain provisions of the statutes relating to drivers of motor vehicles under the influence of liquor and punishment therefor in relation to the ordinance of the village of Edina covering the same subject. M. S. A. c. 169 relates to the general subject of highway traffic regulation. By § 169.121 it is provided among other things that it shall be unlawful for a person to drive or operate a motor vehicle under the influence of an alcoholic beverage or narcotic drug.[2] By § 169.03 it is provided that the provisions of the chapter shall be *"applicable and uniform throughout this state and in all political subdivisions and municipalities therein,* and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this chapter unless expressly authorized herein." (Italics supplied.) This section of the statute further provides: "Local authorities may adopt traffic regulations which are not in conflict with the provisions of this chapter; provided, that when any local ordinance regulating traffic covers the same subject for which a penalty is provided for in this chapter, then the penalty provided for violation of said local ordinance shall be identical with the penalty provided for in this chapter for the same offense." These statutes are to be compared with Edina Ordinance No. 191, § 303.1, which covers the same subject for which penalty is provided by § 169.121. While the penalties provided by the Edina ordinance are not "identical" with those provided by statute, it is unnecessary for us, in view of the disposition of this case, to discuss the issue as to whether or not the ordinance is so inconsistent with the state law as to be invalid.

---

operate or be in actual physical control of any vehicle within this state:

"(a) A person who is under the influence of an alcoholic beverage or narcotic drug."

[2] The punishment provided by M. S. A. 169.121 is as follows:

"Subd. 3. Every person who is convicted of a violation of this section shall be punishable by imprisonment of not less than ten days nor more than 90 days, or by a fine of not less than $10 nor more than $100, and his driver's license shall be revoked for not less than 30 days, except that every person who is convicted of a violation of this section, when such violation is found to be the proximate cause of grievous bodily injury or death to another person, shall be punished by im-

The issue with which we are solely concerned here relates to an alleged denial of due process by procedures followed in the prosecution of the defendant under the ordinance. The defendant asserts that he was convicted of a crime by proceedings civil in nature as a result of which he was denied the right of trial by jury as provided by Minn. Const. art. 1, §§ 4, 6. He further asserts that in the prosecution he was denied the presumption of innocence and the village was permitted to establish proof of guilt by a preponderance of the evidence rather than beyond a reasonable doubt in violation of § 611.02. He further asserts that as a result of the conviction in municipal court he is now exposed to double prosecution for the same offense in violation of Minn. Const. art. 1, § 7.

The narrow question presented is this: Where a municipality has adopted an ordinance relating to the subject of motor vehicle drivers under the influence of drugs or alcoholics, which the legislature says must carry sanctions identical with those provided by state law, may it by prosecution under such ordinances deny to the defendant the same constitutional and statutory safeguards which would surround him had he been prosecuted for the same act under state law? It is conceded that had the defendant been prosecuted by state authorities under § 169.03 he would have been entitled to a jury trial; he would have had the benefit of the presumption of innocence; the state would have had the burden of proving his guilt beyond a reasonable doubt; and he would not be exposed to the risk of double jeopardy.

The village concedes that by Minn. Const. art. 1, §§ 4, 6, the defendant is guaranteed the right of trial by jury, but asserts that these provisions of the constitution were not intended to apply to petty offenses arising under municipal ordinances. They point to M. S. A. 488.09 which provides:

---

prisonment for not less than 60 days nor more than 90 days, and his driver's license shall be revoked for not less than 90 days.

"Subd. 4. Every person who is convicted of a violation of this section within three years of any previous conviction under this section shall be punished by imprisonment for not less than ten days nor more than 90 days, and his driver's license shall be revoked for not less than 90 days."

"* * * all cases arising under the charter, ordinances, or bylaws of such city or village shall be tried by the court without a jury."

We have held that the denial of the right to trial by jury in prosecutions for violation of ordinances is founded upon considerations of expediency.[3] It was pointed out in City of Mankato v. Arnold, 36 Minn. 62, 65, 30 N. W. 305, 307, that:

"Prosecutions for offenses against municipal by-laws * * * must necessarily be summary to be effective, * * *."

We have held in numerous cases that in prosecutions involving the violation of a municipal ordinance, unlike a violation of a state statute, proof of guilt beyond a reasonable doubt need not be established. See, State v. H. J. Minar Co. 249 Minn. 116, 81 N. W. (2d) 268; State v. Maxwell, 249 Minn. 277, 81 N. W. (2d) 855; State v. Gardin, 251 Minn. 157, 86 N. W. (2d) 711; State v. Ketterer, 248 Minn. 173, 79 N. W. (2d) 136; State v. End, 232 Minn. 266, 45 N. W. (2d) 378. Instead the rule is that proof of guilt by a fair preponderance of the evidence will support the verdict of conviction. State v. Wilson, 244 Minn. 382, 69 N. W. (2d) 905.

We have held that a defendant may be convicted both under statute and an ordinance covering the same subject. This apparent disregard of Minn. Const. art. 1, § 7, which is designed to protect the citizen from double punishment for the same offense, seems to find support in the doubtful theory that the municipality and the state are in a sense independent and sovereign units of government analogous to the state and Federal relationship. State v. Lee, 29 Minn. 445, 13 N. W. 913; State v. Oleson, 26 Minn. 507, 5 N. W. 959; State v. Cavett, 171

---

[3]City of Mankato v. Arnold, 36 Minn. 62, 30 N. W. 305; State v. Grimes, 83 Minn. 460, 86 N. W. 449; State v. Marciniak, 97 Minn. 355, 105 N. W. 965, affirmed, 207 U. S. 584, 28 S. Ct. 262, 52 L. ed. 351; State v. Nugent, 108 Minn. 267, 121 N. W. 898; State v. Broms, 139 Minn. 402, 166 N. W. 771; City of St. Paul v. Robinson, 129 Minn. 383, 152 N. W. 777, Ann. Cas. 1916E, 845; State ex rel. Connolly v. Parks, 199 Minn. 622, 273 N. W. 233; State v. Nelson, 157 Minn. 506, 196 N. W. 279; State ex rel. Strupp v. Anderson, 165 Minn. 150, 206 N. W. 51.

Minn. 505, 214 N. W. 479; State v. Stevens, 247 Minn. 67, 75 N. W. (2d) 903; Note, 36 Minn. L. Rev. 143.

There is little difficulty in applying the foregoing authorities to prosecutions for violation of regulatory, licensing, zoning, and other ordinances which relate to matters of local concern.[4] However, when ordinances carry more serious sanctions, adequate protection for the accused must become a significant concern of the court. Accordingly, a more difficult problem arises where ordinances denounce and punish acts which are the subject of state law and which reach beyond the limits of purely local problems. From an examination of our authorities, both statutory and decisional, it is apparent that we have not achieved a satisfactory accommodation between prosecutions under municipal ordinances and state prosecutions so as to assure to a defendant uniformity of treatment in terms of penalties and procedures and protection from subsequent punishment for the same offense.

The municipality urges that we follow State ex rel. Connolly v. Parks, 199 Minn. 622, 273 N. W. 233. The defendant there was charged with having operated a motor vehicle while intoxicated. The offense was denounced and punishable both by state law and municipal ordinance. The prosecution was under the ordinance. The defendant contended that since the subject of the violation was covered by state law he was entitled to a jury trial as a matter of right. We held there that although the offense was punishable by a fine of not exceeding $100 or imprisonment of not more than 90 days and by revocation of license the offense was nevertheless a "petty offense" for which there

___

[4]In discussing the exercise of the police power of a municipality under M. S. A. 412.221, subd. 32, we said in the recent case of Village of Brooklyn Center v. Rippen, 255 Minn. 334, 337, 96 N. W. (2d) 585, 588:

"In this jurisdiction we are committed to a liberal interpretation of statutory and charter provisions as to the exercise of the police power by municipalities concerning matters *peculiarly subject to local regulation.* * * * Where, however, the activity or subject of the regulation is not *peculiarly local in character,* the regulatory power under the general welfare clause is not to be extended beyond its scope unless it clearly appears that the legislature so intended."

was no right to a jury trial. The revocation of the license was considered as an incidental consequence and not as a part of the punishment of the offense. In discussing the offense of driving while under the influence of intoxicating liquor, we there said (199 Minn. 625, 273 N. W. 234):

"* * * It neither involves such moral turpitude as would remove it from that class of cases in which there is no right to a jury trial, nor is it of such a serious nature that it should be given the chararacter of a common-law crime or major offense."

We think that in the light of present-day realities this point of view should be reexamined. In the recent case of City of Canon City v. Merris, 137 Colo. 169, 174, 323 P. (2d) 614, 617, it was said:

"* * * Label the judicial process as one will, no resort to subtlety can refute the fact that the power to imprison is a criminal sanction. To view otherwise is self-delusion. Courts should not, ostrichlike, bury their heads in the sand."

It should be accepted without argument that under present-day conditions driving an automobile while under the influence of intoxicating liquor is an offense of a serious nature. The punishment which must be uniformly applied under M. S. A. 169.121 for the first offense is not less than 10 nor more than 90 days or a fine of not less than $10 nor more than $100 and revocation of driver's license for a period of not less than 30 days. For a subsequent violation within a period of 3 years of a previous conviction, provision is made for imprisonment of not less than 10 nor more than 90 days and revocation of license for not less than 90 days. In addition to the penal provisions the sanctions relating to revocation of license may have grave consequences. In State v. Moseng, 254 Minn. 263, 271, 95 N. W. (2d) 6, 12, we said:

"* * * Much has been said as to whether a license to operate a motor vehicle is a right or a privilege. It has been variously denominated as a privilege in the nature of a right and is an important privilege or right under our present mode of living. No one will deny that we have reached a time in our modern way of life when the motor

vehicle has clearly become a necessity to many people. The very livelihood of many, such as chauffeurs, truckers, traveling salesmen, men who work in skilled or unskilled labor, depends upon the operation of a motor vehicle. Their drivers' licenses are just as valuable as a license to engage in an occupation or profession. Clearly one's inalienable right to liberty and the pursuit of happiness is curtailed if he may be unreasonably kept off the highways maintained by him as a citizen and taxpayer."

The question before us now seems to have been anticipated in State v. Ketterer, 248 Minn. 173, 175, 79 N. W. (2d) 136, 138. That case involved the violation of certain regulatory ordinances of the city of Montevideo relating to the operation of a dancehall in a place where intoxicating liquor was sold. While the issues in that case have no particular bearing on the question before us, its importance lies in the discussion contained in it of the nature of municipal ordinance violations and of the proceedings for their prosecution. It was observed that many courts had applied a confusing variety of terms to these violations "by stressing either the civil or the criminal aspects according to which aspect lent itself most conveniently to the reaching of a desired conclusion." It was noted that most courts having in mind the practices of common law prior to the adoption of our state constitution had held prosecutions under ordinances to be civil proceedings. We observed, however, that our court (248 Minn. 175, 79 N. W. [2d] 138) "with a happy indifference to consistency, has referred to offenses against municipal ordinances and to proceedings for prosecution of the offenders as noncriminal, quasi-criminal, petty, and criminal." We came to the conclusion that the proceedings under punitive ordinances are sui generis. We said (248 Minn. 178, 79 N. W. [2d] 140): "On no other basis can we explain the curious conclusions reached in the various cases." By that decision we recognized a dividing line between punishment for offenses requiring more and those requiring less procedural protection. It was clearly pointed out (248 Minn. 177, 79 N. W. [2d] 139) that under territorial law prior to the adoption of the constitution, right of trial by jury was guaranteed in prosecutions relating to the "peace and dignity of the state *as a whole * * *.*" Right of trial by

jury was not available to one whose violation involved "nothing more than a violation of municipal police regulations or ordinances." It was clearly emphasized that ordinance violations at common law prior to the adoption of our state constitution and relating to local concerns were placed in an entirely different category from violations enacted for the protection of the state as a whole. In that decision we recognized the need for a reappraisal of the status of prosecutions for the violation of municipal ordinances (248 Minn. 181, 79 N. W. [2d] 142) "to determine whether a jury trial ought not to be made available in certain instances." Recognizing that if changes are to be made in our long-established practice governing ordinance violations, we said: "* * * the right to make those changes belongs to the legislature and not to the court."[5]

With these observations we may return to a consideration of M. S. A. 169.03 to inquire if by its provisions the legislature intended that a person charged with the offense defined by it, when prosecuted under an ordinance, is entitled to a jury trial. Although the subject of driving an automobile under the influence of drugs or intoxicating liquor is one of statewide concern, it is nevertheless one which is of legitimate concern to the municipality as well. It is apparent from the provisions of the act that the legislature comprehended that concurrent authority to enforce it might be necessary and desirable. By granting concurrent authority to the municipality to enforce the act, the expense of duplication of state and municipal enforcement personnel is obviated. The legislature therefore gave to the municipality authority to adopt ordinances covering the same subject dealt with by § 169.03. It provided that the penalties set forth in the ordinance must be identical with those of the statute. The act clearly states that in the interest of uniformity its provisions shall have the same application throughout the state. The

---

[5]It may be something more than coincidence that at a session of the legislature following the publication of the Ketterer decision a law was enacted providing that a person convicted of a violation of a municipal ordinance may appeal to the district court "in the same manner and with the same effect as provided by Minnesota Statutes 1957, Chapter 633, except that *the appellant shall have the right to a jury trial.*" (Italics supplied.) L. 1959, c. 388 (M. S. A. 484.471). Approved April 24, 1959.

444

fact that the municipality is given authority to adopt such an ordinance does not change the nature and quality of the offense. As we interpret § 169.03, it was the intention of the legislature that the application of its provisions should be uniform throughout the state both as to penalties and procedures, and requires a municipality to utilize state criminal procedure in the prosecution of the act covered by § 169.03. It would be a strange anomaly for the legislature to define a crime, specify punishment therefor, provide that its application shall be uniform throughout the state, and then permit a municipality to prosecute that crime as a civil offense. Basic civil rights of the defendant would then depend upon the arbitrary choice of the prosecutive authorities as to the court in which action against him would be instituted.[6] When a municipality undertakes such prosecution, it must, therefore, to insure uniformity of treatment, do so in a criminal prosecution which affords the defendant all the protection of criminal procedure including the right of trial by jury and immunity from double punishment.

Reversed.

---

[6]City of Canon City v. Merris, 137 Colo. 169, 323 P. (2d) 614; 72 Harv. L. Rev. 377, 737.